**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MICAH R. WALKER M.D., PLLC**
**d/b/a Women's Wellness of Mississippi,**
**and NEWCARE MD, LLC**

**Plaintiffs**

**v.**

**Civil Action No.:** 3:26–cv–00982-HTW-LGI

**Defendants**

**MORGAN CHARLEIGH PITTS, KIMBERLY AMANDA FLEMING DAVIS, MOKI, LLC d/b/a MOKI Wellness & Aesthetics, M CHARLEIGH CONSULTING, LLC, and UNKNOWN ADDITIONAL ENTITIES or PERSONS A through Z**

## COMPLAINT

## JURY TRIAL DEMANDED

Plaintiffs Micah R. Walker M.D., PLLC, d/b/a Women's Wellness of Mississippi (and also marketed as MVP Men's Clinic [trademark application pending]), and NewCare MD, LLC (collectively "the Practices"), by and through their attorneys, for their Complaint against defendants Morgan Charleigh Pitts, Kimberly Amanda Fleming Davis, MOKI, LLC d/b/a MOKI Wellness & Aesthetics, M Charleigh Consulting, LLC, and Unknown Additional Entities or Persons A through Z, allege as follows:

### Introduction

1. This civil action arises out of the misappropriation of trade secrets, the unauthorized development and post-termination seizure of the Practices' proprietary clinical-software platform and patient data, and related breaches of duty by defendants - two departing nurse practitioners;

the competing medical venture they built using the Practices' resources, information, technology, and patients; and other entities owned by them and/or other entities or persons assisting them. Some or all of the Defendants are attempting to claim the Practices' property and usurp the Practices' opportunities. Plaintiffs assert claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Copyright Act, 17 U.S.C. §§ 101 and 201. Plaintiffs also assert related claims under Mississippi law.

2. The Practices are Mississippi medical practices founded and directed by Micah R. Walker, M.D. ("Dr. Walker"). Defendant Morgan Charleigh Pitts was a nurse-practitioner employee and independent contractor of the Practices who also served as the chief marketing officer and the Clinic Manager for Women's Wellness of Mississippi ("Women's Wellness"). Defendant Kimberly Amanda Fleming Davis was a nurse practitioner engaged by the Practices as an independent contractor and who also served as their Clinical Coordinator and Compliance Officer.

3. While still affiliated with the Practices, Pitts and Davis formed, organized and prepared to launch a competing venture, Defendant MOKI LLC (also marketed as "MOKIWELL" and/or "MOKI Wellness & Aesthetics"). In the weeks surrounding their September 14, 2026 terminations, they transferred the Practices' vendor and credential information to accounts controlled by the competing venture, deleted Practices records, and—after termination—destroyed the Practices' access to the ClinIQ clinical-software platform developed within the Practices, which caused or contributed to the Practices' loss of access to the patient health information/records maintained within it. The ClinIQ dashboard reflected more than approximately 1,800 patient profiles, a figure Plaintiffs believe includes Women's Wellness patient information. Pitts, who contributed to the development of ClinIQ during her affiliation with the

Practices using the Practices' funding and resources, now claims to own the platform personally, has deployed it in the competing venture, and appears to be marketing the platform to the public.[1] She also registered the ReAlign Health brand previously used by and/or within the Practices to another entity owned solely by her and appears to be using that brand in marketing the Practices' ClinIQ platform to the public as "ClinIQ by ReAlign Health."

4. Plaintiffs seek a declaration of their ownership of the ClinIQ platform and the ReAlign Health brand, injunctive relief to secure and restore access to their patient information and to restrain further misappropriation and use of their property, and compensatory, exemplary, and other monetary relief, together with interest, costs, and attorneys' fees as permitted by law.

**Jurisdiction And Venue**

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because it arises under the laws of the United States, namely the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

6. This Court has subject-matter jurisdiction over Plaintiffs' claim concerning ownership and authorship of the ClinIQ software under 28 U.S.C. § 1338(a), which confers original and exclusive jurisdiction over civil actions arising under the Copyright Act.

7. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims under 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy, arising from a common nucleus of operative fact concerning certain defendants' separation from the Practices and their removal, retention, and use of the Practices' assets, information, and technology.

---

[1] Upon information and belief, some or all of the Defendants are marketing ClinIQ to the public without regard for whether the software platform is a "device" under the Federal Food, Drug, and Cosmetic Act (FDCA) that requires FDA clearance or approval before marketing, or whether it qualifies for the 21st Century Cures Act clinical decision support (CDS) exclusion or another exemption.

8. This Court has authority to declare the rights and legal relations of the parties under 28 U.S.C. §§ 2201 and 2202.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because defendants reside or have their principal places of business in this district and the State of Mississippi, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and a substantial part of the property that is the subject of this action is situated in this district.

10. No arbitration or forum-selection provision contained in a later, unauthorized, unnecessary, purported click-through "Terms of Service" for the Practices' ClinIQ platform governs this action. Those terms, the enforceability of which Plaintiffs dispute, purport to bind the the "Customer" and "ClinIQ" as a company. The Practices were not "customers" of the Practices' own asset (i.e., the ClinIQ platform) which was not a company but rather an asset developed within the Practices. Plaintiffs' claims arise from Davis's and Pitts's conduct as former personnel of the Practices and their breaches of duty individually and through their new competing venture MOKI and other entities they own.

**Parties**

11. Plaintiff Micah R. Walker M.D., PLLC, d/b/a Women's Wellness of Mississippi, (and also marketed as MVP Men's Clinic) ("MRW MD") is a Mississippi professional limited liability company owned by Dr. Walker with its principal place of business in Madison, Mississippi. MRW MD provides women's health, men's health, and related medical and aesthetic services.

12. Plaintiff NewCare MD, LLC ("NewCare") is a Mississippi limited liability company owned by Dr. Walker with its principal place of business in Madison, Mississippi. NewCare provides primary care and related medical services to patients of all ages.

13. Defendant Morgan Charleigh Pitts ("Pitts"), also known as Morgan Charleigh, is an adult individual who resides in Madison County, Mississippi. Pitts was employed by the Practices as a nurse practitioner, chief marketing officer, and served as the Women's Wellness Clinic Manager until her termination on September 14, 2026. Pitts is the manager and, upon information and belief, the sole member of M Charleigh Consulting LLC. Pitts is a founder of (and upon information and belief a member of) the competing venture MOKI LLC.

14. Defendant Kimberly Amanda Fleming Davis ("Davis") is an adult individual who resides in Mississippi. Davis was engaged by the Practices as a nurse practitioner under an independent-contractor relationship. She served as the Practices' Clinical Coordinator and Compliance Officer, until her termination on September 14, 2026. Davis is a founder of (and upon information and belief a member of) the competing venture MOKI LLC.

15. Defendant MOKI LLC d/b/a MOKI Wellness & Aesthetics ("MOKI") is a Mississippi limited liability company with its principal place of business located at 118 Weisenberger Rd. #200, Madison, MS 39110. Upon information and belief, defendants Pitts and Davis are members of MOKI which they created as a competing venture to Plaintiffs. It is currently unknown whether MOKI has more than these two members.

16. Defendant M Charleigh Consulting LLC ("M Charleigh") is a Mississippi limited liability company with its principal place of business at 139 Rhodes Lane, Canton MS 30046. Defendant Pitts is the manager and, upon information and belief, the sole member of M Charleigh.

17. Unknown Additional Entities or Persons A through Z are currently unknown entities or persons that facilitated and/or are facilitating the conduct that is the subject of this action and/or that are claiming any ownership interest in the ClinIQ platform or environment and/or the "ReAlign Health" brand.

## Factual Allegations

*The Practices, Their Confidential Information, and Defendants' Positions of Trust*

18. The Practices maintain confidential and proprietary information essential to their business, including patient lists and demographic data, clinical protocols and chart-review materials, vendor and pharmacy relationships, formulary and pricing information, business and financial records, and the ClinIQ clinical-software platform and related technology.

19. The Practices protect this information through secure, password-protected systems, restricted access, and written policies. The Practices' Employee Handbook, in effect since January 1, 2018 broadly defines the Practices' confidential information to include information concerning patients, services, treatments, business methods, and financial and accounting information; prohibits employees from using the Practices' confidential information for their own benefit; and requires employees to return all Practices property and information upon termination.

20. As a nurse-practitioner employee, Pitts occupied a position of trust and confidence with the Practices, acting as chief marketing officer for the Practices and Clinic Manager for Women's Wellness, and she had access to the Practices' confidential information, systems, patients, vendors, and technology.

21. Davis likewise occupied a position of trust and confidence. In addition to her patient-care responsibilities, Davis served as the Practices' Clinical Coordinator and was identified by Dr. Walker to the Mississippi Board of Nursing as their Compliance Officer, with responsibility

for clinical-coordination, collaborative-practice, and compliance matters. She had access to the Practices' confidential information, systems, patients, vendors, and technology.

*Development of ClinIQ Within the Practices*

22. The clinical-software platform ultimately known as ClinIQ originated and was developed during Pitts's affiliation with the Practices and in response to a request by Dr. Walker to address the Practices' clinical and operational needs. It was incubated using data from Women's Wellness with the expectation that it would eventually be utilized across the various clinics encompassed by the Practices.

23. On or around November 10, 2025, Pitts, utilizing the Replit technology platform[2] paid for by the Practices (https://hormone-health.replit.app/), created the code for an initial software deliverable to Dr. Walker, who dictated the clinical workflows for the software. Pitts described ClinIQ as a tool "built based on [his] original request" that would "empower the team to operate with more confidence" and stated that she had integrated specific clinical features "like [he] wanted." ClinIQ uses artificial intelligence technology to analyze protected health information ("PHI") pulled from the Practices' Elation electronic health records ("EHR"). The software was designed to connect the dots across labs, helping clinicians at the Practices identify patterns, stratify risk, and make decisions with clarity and confidence; to provide the Practices' patients with clear, easy to understand and follow personalized insights with guidance on nutrition, supplements, and lifestyle; and to assist the Practices generally in tracking trends over time and capturing deeper clinical insight through more efficient documentation (including AI-supported SOAP notes). Dr. Walker reviewed the software deliverable, responded approvingly, and it was distributed to Practices personnel for further development and beta testing within the Practices.

[2] Replit is a cloud-based AI-powered platform for building, running, and deploying software in a browser.

24. ClinIQ was developed using the Practices' funding, systems, accounts, and resources. Between November 7, 2025 and April 5, 2026, development-related Replit charges were paid using Dr. Walker's and/or the Practices' American Express account.

25. ClinIQ was eventually deployed within the Practices and populated with Women's Wellness patient information.

26. On April 13, 2026, unbeknownst to Plaintiffs, it appears Pitts created and electronically accepted a HIPAA Business Associate Agreement associated with a Women's Wellness ClinIQ "account," under which ClinIQ (which was simply a platform and not an existing legal entity of any sort) was the business associate and Women's Wellness (which was simply a d/b/a of the MRW MD not an existing legal entity) was the covered "entity." The ClinIQ environment came to contain Women's Wellness patient information and protected health information. The platform's dashboard reflected more than approximately 1,800 patient profiles, a figure Plaintiffs believe includes Women's Wellness patient information.

27. Months before Pitts's termination—Dr. Walker addressed the ownership of ClinIQ and its company-funded development infrastructure directly with Pitts, characterizing the intellectual property as belonging to the Practices and addressing control of the associated cloud and development accounts.

28. The Practices did not authorize Pitts to contribute to the development of ClinIQ for her personal ownership, did not assign the platform or their intellectual property to Pitts or to any other entity, and did not agree that the Practices' funding, resources, clinical workflows, patient information, or operational environment could be used to create a separately owned commercial product for Pitts's benefit.

29. Authorship of and copyright in ClinIQ vested in the Practices upon the work's creation in or around November 2025, by operation of federal law and before the existence of any ClinIQ "Terms of Service" (seemingly created by Pitts) purporting to vest intellectual-property rights in "ClinIQ." No later, unilateral, unauthorized click-through terms presented through the platform operated to divest the Practices of the authorship or ownership that had already vested in the Practices.

*The ReAlign Health Brand*

30. On February 3, 2026, while affiliated with the Practices, Pitts presented the "ReAlign Health" brand to an outside laboratory vendor as the uniform telehealth and laboratory identity for the Practices' three affiliated clinics operating, in her words, "under our one umbrella," and used Practices email accounts to develop the associated laboratory and testing relationships.

31. Approximately twelve weeks later, on April 29, 2026, while still affiliated with the Practices, Pitts registered the same "ReAlign Health" name as a fictitious business name of her separately owned entity M Charleigh. The Practices did not authorize the transfer or registration of the ReAlign Health brand to Pitts, her entity, or any other entity. M Charleigh appears to be marketing "ClinIQ by ReAlign Health" to the public. See Website Capture attached hereto as Exhibit 1.[3] The Practices have not consented to Pitts's or M Charleigh's possession, commercialization, or use of ClinIQ or its use of the "ReAlign Health" brand.

*Pre-Termination Exports, Transfers, and Deletions*

32. On June 8, 2026, while still affiliated with the Practices, Davis exported two patient lists from the Practices' Elation EHR system filtered to female patients. See Elation email attached hereto as Exhibit 2.

[3] Exhibit 1 is a printout from the following publicly available website: https://cliniqapp.ai/

33. On August 30, 2026, while still affiliated with the Practices, Pitts and Davis formed MOKI. Two days later on September 1, 2026, Davis's Practices account trashed approximately twenty-six unique files from the Practices' computer system over approximately thirty minutes and then permanently deleted most of them, including what appears to be a collaborative practice agreement, quarterly chart-review, and compliance-related materials. See Google Workspace Log attached hereto as Exhibit 3.

34. On the same day and during the same approximately thirty-minute window, Pitts's Practices account trashed approximately 17 unique files from the Practices' computer system, including what appears to be a collaborative practice agreement, login credentials, and various protocols and standing orders of the Practices. See Google Workspace Log attached hereto as Exhibit 3.

35. On September 12, 2026, two days before her termination, Davis forwarded from her Practices email account to the competing venture's account, kim@mokiwell.com, multiple categories of Practices information, including pharmacy and vendor communications and formulary resources, and provider login credentials, including credentials to a compounding-pharmacy account containing patient prescription information. See Email Forwards attached hereto as Exhibit 4.

36. In the several days after her termination, Davis continued her efforts to misappropriate assets belonging to the Practices by successfully taking control of an American Health Training account credentialed to NewCare, (the training services for which were paid for by the Practices) and recredentialing that account to MOKI, thereby converting the Practices compliance infrastructure. See Email attached hereto as Exhibit 5. While she was still affiliated with the Practices, Davis similarly – but unsuccessfully - attempted to take control of an Open

Evidence (an AI tool utilized by the Practices into which PHI of Practice patients was placed) account credentialed to NewCare and attempted to recredential that account to MOKI. See Email attached hereto as Exhibit 6.

37. In the several days before the terminations of Pitts and Davis, an unusually large volume of shredded paper records were identified at the Practices mixed with food waste. Upon information and belief, Pitts and Davis played some role in the shredding of this material.

*Termination, Post-Termination Lockout of Patient Data,*
*and the Competing Venture's Use of ClinIQ*

38. The Practices terminated Pitts's and Davis's relationships effective September 14, 2026, and terminated Dr. Walker's collaborative relationships with them.

39. By no later than September 21, 2026, Dr. Walker had lost access to ClinIQ and was unable to reset credentials to login and the platform displayed a lockout condition. Another login attempt on September 24, 2026 yielded the same results. As a result, the Practices were unable to access their patient records and PHI maintained within ClinIQ—reflected on the dashboard as more than approximately 1,800 patient profiles—on infrastructure the Practices can no longer control as a result of the lockout. See Login Failure Prompts attached hereto as Exhibit 7.

40. Before filing this lawsuit, counsel for the Practices made numerous attempts to confirm the location and security of the Practices' PHI and to secure the PHI's return, as required by HIPAA. See Letters from M. McLaughlin attached hereto as Exhibit 8. Defendants declined to return the PHI which, upon information and belief, they are using in the competing venture MOKI.

41. Instead, in mid-October defendants asserted through counsel that Pitts "cancelled" the Women's Wellness ClinIQ "subscription" and allegedly removed her personal credit card as the "account's" payment method. Because ClinIQ was a software platform developed within the

Practices (and Women's Wellness is simply a d/b/a of the Practices), there should have been no "subscription," "account," or payment method, all of which Plaintiffs believe were unilaterally set up, without authority, by defendant Pitts while she was still affiliated with the Practices.

42. Defendants' unsubstantiated claims, through counsel, that the Women's Wellness PHI held in ClinIQ is preserved and that no unauthorized party is using it both rings hollow **and** constitutes an admission that defendants are indeed wrongfully withholding the PHI in violation of federal law. See Defense Counsel October 13, 2026 email attached hereto as Exhibit 9.

43. Before filing this lawsuit, the Practices attempted, to no avail, to determine the identity of both Pitts's and Davis's new collaborating physician(s) so that they could appeal to a ***physician(s)*** to try to secure the return of the Practices' PHI. The Practices have been unable to determine if either Pitts or Davis have new collaborating physician arrangements that comply with Mississippi law (or if they have them at all).[4]

44. Upon information and belief, after her termination, Davis requested the use of another Practices employee's active Elation credentials.

45. Within days of the September 14, 2026 separations, the competing venture, MOKI, deployed ClinIQ as part of its public-facing prospective-patient intake process, embedding a live ClinIQ-hosted patient-intake form on its "Founder List" webpage. The Practices have not consented to MOKI's possession, commercialization, or use of ClinIQ.

[4] Counsel for the Practices contacted the Mississippi State Board of Nursing ("MSBN") which declined to identify Pitts' new collaborating physician without authorization from Pitts. Disturbingly, the Board – which is tasked with regulatory compliance for nurses - took the position that collaborative agreements and the identity of the collaborating physician are exempt from public disclosure. Thus, the Practices cannot determine if Pitts is practicing under the supervision of a collaborating physician at all, much less in a manner that meets state law requirements. Further, through queries to the MSBN and Mississippi State Board of Medical Licensure ("MSBML"), Plaintiffs have discovered that Davis currently has no approved practice site on file with the MSBN and no collaborating physician registered with the MSBML. Yet MOKI social media posts demonstrate that Davis is actively treating patients and prescribing therapeutics at MOKI.

46. Following the separations, Women’s Wellness experienced more than thirty patient cancellations at its Women's Clinic, and defendants publicly promoted the competing venture, MOKI, and solicited prospective patients.

*Removal/Retention of Practices Property*

47. Following the separations, Pitts retained a Practices-owned HP Envy laptop computer that was not returned at the September 25, 2026 property exchange but was subsequently returned. It is not yet known if the laptop and/or data stored thereon, were modified or altered in any way while Pitts wrongfully retained the laptop.

48. As discussed above, a nurse practitioner is required to work under the supervision of a collaborating physician who must regularly review the charting done by the nurse practitioner and must maintain records of that review. At some unknown time prior to their September 14 terminations, Davis and Pitts each removed from the premises of the Practices, the three-ring chart-review binders for Pitts and Davis which contained the Practices’ collaborative-practice agreements, quarterly-meeting documentation, and patient-level chart-review records. After several demands by counsel, they finally returned the binders. It is presently unknown if any materials were removed and/or copied from the binders before they were returned. When Davis returned her binder, it contained extensive black-marker redactions and handwritten annotations that were not present when the records were maintained at the Practices.

**COUNT I**
**Declaratory Judgment of Ownership of ClinIQ**
**(Copyright Act, 17 U.S.C. §§ 101, 201; 28 U.S.C. §§ 1338, 2201)**
**(Against Pitts and M Charleigh)**

49. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

50. The ClinIQ software is an original work of authorship fixed in a tangible medium of expression and subject to protection under the Copyright Act.

51. Pitts contributed to the development of ClinIQ as an employee of the Practices, within the scope of her employment, and at the Practices' request, using the Practices' funding, systems, accounts, and resources. Under 17 U.S.C. §§ 101 and 201(b), a work prepared by an employee within the scope of employment is a "work made for hire," the authorship and copyright in which vest in the employer absent a written instrument signed by both parties expressly providing otherwise.

52. No written instrument signed by the Practices and Pitts assigns authorship or ownership of ClinIQ to Pitts, or any other entity. No unauthorized, click-through "Terms of Service" later created (seemingly by Pitts) and presented through the ClinIQ platform—which purport to vest platform intellectual property in "ClinIQ"—operate to divest the Practices of the authorship and ownership that vested in it by operation of law upon the work's creation.

53. Pitts, through counsel, has asserted that she personally owns ClinIQ and merely permitted the Practices to use it, thereby creating an actual, justiciable controversy between the parties concerning authorship and ownership of the work.

54. Pitts and/or M Charleigh now appear to be marketing ClinIQ to the public as "ClinIQ by ReAlign Health," the Practices' brand which Pitts registered to her entity M Charleigh, without authority from the Practices (see Exhibit 1 hereto), as discussed further in the facts section above and in Count VII below, and thus it appears M Charleigh may be asserting an ownership interest in ClinIQ.

55. Plaintiffs are entitled to a declaration under 28 U.S.C. §§ 2201 and 2202 that the Practices are the author and owner of ClinIQ as a work made for hire, and that no other person or entity (including Pitts and M Charleigh) has ownership interest in the platform.

**COUNT II**
**Misappropriation of Trade Secrets — Defend Trade Secrets Act, 18 U.S.C. § 1836**
**(Against Pitts, Davis, MOKI and M Charleigh)**

56. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

57. Plaintiffs owns trade secrets within the meaning of 18 U.S.C. § 1839(3), described with particularity as follows: (a) the Practices' Elation patient-list compilations; (b) the ClinIQ platform and its source code, which embeds the Practices' configured clinical workflows and carries "Women's Wellness of Mississippi" configuration content predating any competing use; (c) the Practices' clinical protocols and chart-review compilations; and (d) the Practices' vendor, pharmacy, and formulary compilations, including Belmar Pharma formulary resources, dosing and case-review materials, and the identity and contact information of compounding-pharmacy clinical liaisons, together with associated pricing. Each of these compilations was assembled through the Practices' effort and expense and derives independent economic value from not being generally known to or readily ascertainable by competitors. They are assets that contribute to the Practices' competitive position in delivering medical and aesthetic services.

58. Plaintiffs took reasonable measures to keep this information secret, including password-protected and access-restricted systems and written confidentiality and return-of-property policies.

59. These trade secrets relate to products and services used in, and intended for use in, interstate commerce. As part of offering medical and aesthetic services, the Practices have relationships with out of state laboratories, vendors, technology platforms, compounding pharmacies and treatment partners. Further, the Practices transmit patient specimens, proprietary protocols, and billing information to out-of-state laboratories, vendors, pharmacies and insurers as part of delivering medical services. The misappropriated trade secrets at issue relate to those cross-border relationships.

60. Defendants Pitts, Davis, MOKI and M Charleigh misappropriated Plaintiffs' trade secrets within the meaning of 18 U.S.C. § 1839(5)–(6) by acquiring, disclosing, and using them without consent, under circumstances giving rise to a duty to maintain their secrecy, including, but not limited to, Davis's June 8, 2026 patient-list exports; Davis's September 12, 2026 transfer of vendor, pharmacy, formulary, accounts and credential information to the competing venture MOKI's account (s); the retention and use of ClinIQ in the competing venture, MOKI; and M Charleigh's marketing of ClinIQ to the public as "ClinIQ by ReAlign Health.".

61. As a direct and proximate result, Plaintiffs have suffered damages, and defendants have been unjustly enriched, in amounts to be determined at trial. Defendants' misappropriation was willful and malicious, entitling Plaintiffs to exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3). Plaintiffs are also entitled to injunctive relief under 18 U.S.C. § 1836(b)(3)(A) to prevent actual and threatened misappropriation.

## COUNT III
## Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030
## (Against Pitts, Davis and M Charleigh)

62. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

63. The Practices' computer systems, the Elation electronic health record system, and the ClinIQ platform are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in or affect interstate commerce.

64. After her termination, Pitts and/or M Charleigh claims to have cancelled the Women's Wellness ClinIQ "subscription" and removed the payment method associated with the "account," even though the Practices did not need a subscription to or an account for their own software asset. Both the creation and the termination of any such subscription and/or account caused or contributed to the loss and impairment of the Practices' access to and the availability of the patient records and PHI maintained within ClinIQ, in violation of 18 U.S.C. § 1030(a)(5). The precise mechanism and effective time of lockout are presently within defendants' knowledge and will be confirmed through discovery of alleged account, subscription and billing records for the ClinIQ platform.

65. Davis intentionally impaired the integrity and availability of the Practices' data by deleting, on September 1, 2026, approximately twenty-six files from the Practices' protected computer systems, including, but not limited to, the Practices' collaborative-practice agreement and compliance records.

66. Pitts intentionally impaired the integrity and availability of the Practices' data by deleting, on September 1, 2026, approximately seventeen files from the Practices' protected computer systems, including, but not limited to, the Practices' collaborative-practice agreement and standing orders and protocols.

67. Upon information and belief, Davis also, after her termination and without authorization, sought to obtain access to the Practices' Elation system through another Practices employee's active credentials; that request was declined.

68. As a direct and proximate result, Plaintiffs have suffered loss to the Practices and/or the ClinIQ system exceeding $5,000 in value during a one-year period within the meaning of 18 U.S.C. § 1030(c)(4)(A)(i)(I), including the technical investigation and attempted preservation of the ClinIQ environment, and counsel's efforts to assess and restore the Practices' access to their data, and other consequential damages. Plaintiffs are entitled to compensatory damages and injunctive and other equitable relief under 18 U.S.C. § 1030(g).

**COUNT IV**
**Misappropriation of Trade Secrets — Mississippi Uniform Trade Secrets Act, Miss. Code Ann. § 75-26-1 et seq.**
**(Against Pitts, Davis, MOKI and M Charleigh)**

69. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

70. The information described above, including the Practices' patient lists and compilations, the ClinIQ platform, the Practices' clinical protocols, and their vendor, pharmacy, formulary, and pricing information, constitute trade secrets under the Mississippi Uniform Trade Secrets Act, Miss. Code Ann. § 75-26-1 et seq., because the Practices derive independent economic value from the information not being generally known, and the information is the subject of reasonable efforts to maintain secrecy.

71. Defendants Pitts, Davis, MOKI, and M Charleigh misappropriated these trade secrets by acquiring them through breach of a confidential relationship(s) and by using and disclosing them without authorization, as described herein.

72. As a direct and proximate result, Plaintiffs have suffered actual loss and defendants have been unjustly enriched in amounts to be determined at trial. Because defendants' misappropriation was willful and malicious, Plaintiffs are entitled to exemplary damages and

attorneys' fees under Miss. Code Ann. § 75-26-7 and § 75-26-9, and to injunctive relief under Miss. Code Ann. § 75-26-5.

**COUNT V**
**Breach of Fiduciary Duty and Duty of Loyalty**
**(Against Pitts and Davis)**

73. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

74. As nurse-practitioner employees/independent contractors occupying positions of trust, and as the Practices' Clinical Coordinator and Compliance Officer, respectively, Pitts and Davis each owed the Practices duties of good faith and loyalty during their affiliation with the Practices.

75. Pitts and Davis breached those duties by, among other things, and independent of any misappropriation of trade secrets: diverting the Practices' resources, systems, and compensated time to competing and outside ventures; forming, organizing, preparing, and launching the competing venture MOKI while still affiliated with the Practices; Davis's deletion, on September 1, 2026, of Practices' collaborative-practice agreement(s) and quarterly chart-review and compliance records; Pitts's deletion on September 1, 2026 of Practices' collaborative-practice agreement(s), standing orders and protocols; and their taking, retaining, and withholding the Practices' property. These breaches entitle Plaintiffs to relief even without proof that any of the information at issue constitutes a trade secret.

76. As a direct and proximate result, Plaintiffs have been damaged, and defendants have profited from their breaches, in amounts to be determined at trial. Plaintiffs are entitled to

recover their damages and to disgorgement and forfeiture of the compensation and profits defendants obtained through their disloyalty.

**COUNT VI**
**Breach of Duty of Loyalty — Usurpation of Corporate Opportunity**
**(Against Pitts, Davis, M Charleigh and MOKI)**

77. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

78. The ClinIQ platform and the ReAlign Health brand were opportunities within the line of the Practices' business, developed and presented as enterprise assets, in which the Practices had an interest and reasonable expectancy.

79. Pitts and Davis breached their duty of loyalty by appropriating those opportunities to Pitts and/or her separately owned entities, including by registering the ReAlign Health brand to M Charleigh, and asserting personal ownership of ClinIQ and deploying it in the competing venture, MOKI.

80. As a direct and proximate result, Plaintiffs have been damaged, and defendants have been unjustly enriched, in amounts to be determined at trial. Plaintiffs are entitled to damages, disgorgement, and the imposition of a constructive trust on the income and assets Pitts derived from the usurped opportunities.

**COUNT VII**
**Declaratory Judgment of Ownership of the ReAlign Health Brand**
**(28 U.S.C. §§ 2201, 2202)**
**(Against Pitts and M Charleigh)**

81. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

82. An actual, justiciable controversy exists between the Practices and Pitts and/or M Charliegh concerning ownership of the ReAlign Health brand, which Pitts contributed to the development of and presented as an enterprise asset of the Practices—"under our one umbrella"—before registering it to her own entity. The Practices' claim to the brand rests on their prior and continuous use of the "ReAlign Health" identity in connection with their telehealth and laboratory services and on Pitts's usurpation of that enterprise opportunity.

83. Plaintiffs are entitled to a declaration under 28 U.S.C. §§ 2201 and 2202 that the Practices own the ReAlign Health brand and that Pitts and M Charleigh Consulting LLC and/or any other persons or entities hold no superior right to it.

**COUNT VIII**
**Conversion**
**(Against Pitts and Davis)**

84. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

85. Plaintiffs own and are entitled to immediate possession of the unredacted and unaltered originals (and/or copies if the originals were not preserved) of the three-ring chart-review binders removed from the Practices by Pitts and Davis, as well as any and all copies they made of the materials in the binders while they were in their possession. The binder(s) contained the Practices' collaborative-practice agreements, quarterly-meeting documentation, and patient-level chart-review records.

86. This Count is limited to tangible personal property and does not seek relief for the conversion of electronic data or intangible information.

87. Defendants have wrongfully exercised dominion and control over that property in defiance of Plaintiffs' rights and have refused to return the property after demand, except as altered and/or redacted making the binders incomplete.

88. As a direct and proximate result, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT IX**
**Tortious Interference with Business Relations and Contract**
**(Against Pitts, Davis and MOKI)**

89. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

90. Plaintiffs have business relationships with their patients and contractual and at-will relationships with their personnel.

91. Defendants Pitts, Davis and MOKI, through intentional and willful acts calculated to cause damage to the Practices' lawful business and undertaken without right or justifiable cause, interfered with those relationships. Those acts included Davis's public solicitation announcing her "professional transition" and tagging Pitts in a post directed to persons known to her through her clinical work at the Practices; the formation of a competing venture while still affiliated with the Practices and the deployment by the competing venture MOKI, within days of the separations, of a public ClinIQ-hosted "Founder List" intake form to capture the Practices' prospective and existing patients; and the misuse of the Practices' confidential information and the diversion of their patients and personnel to the competing venture, MOKI.

92. Upon information and belief, defendants' interference was a proximate cause of actual damage to the Practices, including patient cancellations and lost patients and revenue, in amounts to be determined at trial.

## Prayer For Relief

**WHEREFORE**, Plaintiffs Micah R. Walker M.D., PLLC d/b/a Women's Wellness and d/b/a NewCare MD.LLC respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. Declaring, under 28 U.S.C. §§ 2201 and 2202, that the Practices are the authors and owners of the ClinIQ platform as a work made for hire and that no other person or entity has any ownership interest in it;

B. Declaring, under 28 U.S.C. §§ 2201 and 2202, that the Practices own the ReAlign Health brand;

C. Preliminarily and permanently enjoining Defendants, and all persons in active concert or participation with them from using, disclosing, commercializing, destroying, or impairing the Practices' trade secrets, patient information, protected health information, and intellectual property, including ClinIQ; and directing defendants to restore the Practices' access to, and to preserve and return, the Women's Wellness patient information and records maintained within ClinIQ;

D. Awarding compensatory damages in an amount to be determined at trial on each Count;

E. Adjudging defendants to have been unjustly enriched and requiring disgorgement of profits and compensation, and imposing a constructive trust on the income and assets derived from defendants' wrongful conduct;

F. Awarding exemplary damages and attorneys' fees under 18 U.S.C. § 1836(b)(3) and Miss. Code Ann. §§ 75-26-7 and 75-26-9, and such other statutory and punitive damages as are permitted by law;

G. Awarding Plaintiffs the return and delivery of their property under Count VIII;

H. Awarding pre-judgment and post-judgment interest, costs, and attorneys' fees as permitted by law; and

I. Granting Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted this the 13th day of November 2026.

**MICAH R. WALKER M.D., PLLC d/b/a WOMEN'S WELLNESS OF MISSISSIPPI and NEWCARE MD, LLC**

By: *_/s/ Stephanie M. Rippee_*________
Stephanie M. Rippee

OF COUNSEL:
Stephanie M. Rippee (MSB No. 8998)
WATKINS & EAGER PLLC
Post Office Box 650
Jackson, MS 39205-0650
(601) 965-1900 (p)
(601) 965-1901 (f)
*srippee@watkinseager.com*

**VERIFICATION**

I, Micah R. Walker, M.D., am the sole member/manager of both Micah R. Walker M.D., PLLC and NewCare MD, LLC, the Plaintiffs in this action, and I am authorized to make this verification on their behalf. I have read the foregoing Complaint. The factual allegations set forth in it are true and correct of my own personal knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.

This the 13th day of November, 2026.

Micah R. Walker, M.D.

**ARTIFICIAL INTELLIGENCE CERTIFICATION**

This Complaint was generated with the assistance of Westlaw CoCounsel and Westlaw AI Deep Research. I hereby certify that, in compliance with Federal Rule of Civil Procedure 11, I have independently reviewed the source material and verified the accuracy of the artificial content. I understand that I am responsible for the contents of this Complaint and that failure to comply with Rule 11(b) may result in sanctions under Rule 11(c).

This the 13th day of November, 2026.

*/s/ Stephanie M. Rippee*
Stephanie M. Rippee