**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MICAH R. WALKER, M.D., PLLC**
**d/b/a Women's Wellness of Mississippi**
**and NewCare MD, LLC** **Plaintiffs**

**v.** **Civil Action No. 3:26-cv-00982-HTW-LGI**

**MORGAN CHARLEIGH PITTS, KIMBERLY AMANDA FLEMING DAVIS, MOKI, LLC d/b/a MOKI WELLNESS AND AESTHETICS, M CHARLEIGH CONSULTING, LLC, AND UNKNOWN ADDITIONAL ENTITIES OR PERSONS A through Z** **Defendants**

---

# DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

COME NOW Defendants, Morgan Charleigh Pitts ("Pitts"), Kimberly Amanda Fleming Davis ("Davis"), MOKI, LLC d/b/a MOKI Wellness & Aesthetics ("MOKI"), and M Charleigh Consulting, LLC ("M Charleigh") (collectively, "Defendants"), through counsel, and submit this Memorandum in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2]. In support thereof, Defendants state as follows:

## INTRODUCTION

Plaintiffs seek extraordinary injunctive relief based largely on their contention that they own a clinical software platform known as ClinIQ and that their former nurse practitioners, Pitts and Davis, misappropriated Plaintiffs' trade secrets in establishing a competing medical practice. However, Plaintiffs' allegations are premised on numerous factual inaccuracies, unsupported assumptions, and mischaracterizations of Defendants' conduct.

ClinIQ is not Plaintiffs' electronic health record ("EHR") system, Elation, but a cloud-based subscription platform developed by Pitts to analyze existing patient information and generate supplemental clinical reports. Plaintiffs retain access to the underlying medical records through Elation, and their patients retain access to their individual ClinIQ patient portals.

Women's Wellness and MOKI maintain entirely separate ClinIQ subscription accounts. Contrary to Plaintiffs' assertions, Pitts and Davis have not taken or transferred Women's Wellness's patient information to MOKI. ClinIQ maintains separate subscription environments for each practice, and Women's Wellness's patient information remains intact within its own environment. Moreover, Defendants dispute Plaintiffs' claimed ownership of ClinIQ and the characterization of the electronic transactions upon which Plaintiffs rely as evidence of misappropriation.

Despite characterizing this matter as an emergency, Plaintiffs waited nearly eight weeks to seek injunctive relief, have identified no patient whose treatment has been compromised by their loss of access to ClinIQ, and have not demonstrated that monetary damages would inadequately compensate them for their alleged economic losses. Any legitimate concerns regarding access to patient information do not justify effectively determining ownership of ClinIQ or prohibiting Defendants from using the underlying software. As discussed below, Plaintiffs have not established their entitlement to the relief requested.

## ARGUMENT AND AUTHORITIES

### A. Legal Standard

A temporary restraining order or preliminary injunction is an extraordinary remedy that should not be granted unless the movant clearly establishes each of four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs any harm that will result to the nonmovant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *Daniels*

*Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). Plaintiffs bear the burden of establishing each of these elements. "These elements are not arbitrary and disconnected," and "even a flawless showing on one element will not excuse a total absence of proof on another." *Trinity USA Operating, LLC v. Barker*, 844 F.Supp. 2d 781, 785-86 (S.D. Miss. 2011) (citations and quotations omitted). And "although the denial of a request for a temporary restraining order…may work injury to the movant, this alone is insufficient to compel its issuance." *Id.* (citations and quotations omitted).

"Temporary restraining orders…are extraordinary forms of relief. Although this observation rises frequently from courts considering requests for such orders, the enormity of the relief is difficult to overstate. In essence, a movant for pre-trial, injunctive relief represents to the court that its case is so particularly unusual, the strength of its case so particularly great, and the risk of incurable injury to particularly unbearable that the promise of a typical day in court ultimately will serve no practical purpose." *Trinity USA*, 844 F.Supp. 2d at 785 (citations and quotations omitted).

**B. Plaintiffs have failed to establish a substantial likelihood of success on the merits.**

Plaintiffs' Motion is premised primarily on their claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and the Mississippi Uniform Trade Secrets Act ("MUTSA"), Miss. Code Ann. § 75-26-1, *et seq*. Both statutes require proof of the existence of a protectable trade secret and its misappropriation. *See Computer Sciences Corp. v. Tata Consultancy Services, Ltd.*, 159 F.4th 429, 438 (5th Cir. 2025); *Seven Seas Technologies, Inc. v. Infinite Computer Solutions, Inc.*, 353 F. Supp. 3d 545, 553 (S.D. Miss. 2018).

Central to Plaintiffs' Motion is their assertion that they own ClinIQ. However, Pitts began independently developing ClinIQ in August 2025, for use by multiple medical providers, not at Dr. Walker's direction. Although Plaintiffs paid certain Replit expenses from November 2025 through

April 2026, Pitts established ClinIQ, LLC in April 2026 and thereafter assumed responsibility for those expenses. *See* **Exhibit A** (Excerpts of Pitts' bank statements related to ClinIQ). Women's Wellness used ClinIQ through a subscription established by Pitts that allowed the Practice to use the platform without charge. Dr. Walker never maintained his own login credentials or served as an administrator of ClinIQ.

Pitts was employed part-time to provide patient care as a nurse practitioner and separately compensated on a 1099 basis for her services as Chief Marketing Officer. She was not hired to develop software in either capacity. Plaintiffs have not established that Pitts developed ClinIQ within the scope of her employment, and no written agreement exists designating ClinIQ as a work made for hire or assigning ownership of the software to Plaintiffs. *See* 17 U.S.C. §§ 101, 201(b); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–53 (1989) (applying common-law agency principles to distinguish employees from independent contractors); *Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568, 571–72 (4th Cir. 1994) (applying common-law agency principles to determine whether software was developed within the scope of employment). Neither Plaintiffs' payment of certain development expenses nor their use of ClinIQ or storage of patient information establishes ownership of the underlying software.

Plaintiffs broadly characterize various categories of information as trade secrets without adequately establishing their independent economic value or the measures taken to maintain their secrecy. *See* 18 U.S.C. § 1839(3); Miss. Code Ann. § 75-26-3(d). Plaintiffs must establish their acquisition through improper means or their improper disclosure or use. *See* 18 U.S.C. § 1839(5); Miss. Code Ann. § 75-26-3. Plaintiffs' allegations disregard the circumstances surrounding the activities upon which they rely:

- Many of the documents deleted by Pitts and Davis on September 1, 2026, were personal in nature, including school-related documents and documents pertaining to their children. The

proposed clinical protocols and standing orders they affdeleted were independently drafted by them and never formally adopted by the Practice. Moreover, the substantive clinical information was replicated in templates within Elation, to which Plaintiffs retain access.

- The June 8, 2026, patient-list export by Davis was made in connection with her clinical responsibilities at Women's Wellness and was not used to solicit patients on behalf of MOKI. Plaintiffs' own exhibit confirms that neither Davis nor Pitts exported patient lists between June 16 and September 14, exhibited increased activity within Elation preceding termination, or logged into Elation following termination. See Complaint, Ex. 2..

- Davis retained pharmacy contact information on September 12, 2026, to enable her to notify the pharmacy of any termination of her affiliation with Plaintiffs and protect her professional credentials and prescribing authority.

- Davis established the American Health Training account to facilitate HIPAA compliance training for Plaintiffs' employees, who retain access to their individual training documentation. Plaintiffs have not identified any trade secret maintained within that account.

*See* **Exhibit B** (Kim Davis Affidavit); **Exhibit C** (Morgan Pitts Affidavit).

MOKI utilizes ClinIQ through its own separate subscription account and has not accessed or utilized Women's Wellness's patient information. Nor does the existence of a competing medical practice, standing alone, establish actual or threatened misappropriation. *See CAE Integrated, L.L.C. v. Moov Technologies, Inc.*, 44 F.4th 257, 262–64 (5th Cir. 2022) (affirming denial of preliminary injunction where evidence failed to establish actual or threatened use of former employer's trade secrets).

To the extent Plaintiffs rely on the Computer Fraud and Abuse Act, authorized access to information for an allegedly improper purpose does not, without more, establish that a user exceeded authorized access. *See Van Buren v. United States*, 593 U.S. 374, 395 (2021) (holding that obtaining information for an improper purpose does not constitute exceeding authorized access where the individual was otherwise entitled to access the information).

In short, when considering these circumstances, Plaintiffs' evidence is insufficient to establish a substantial likelihood of success on the merits warranting the requested injunction.

**C. Plaintiffs have failed to establish a substantial threat of irreparable harm.**

Plaintiffs' delay in seeking injunctive relief substantially undermines their request for emergency relief. They discovered their loss of access to ClinIQ on September 21, 2026, but waited fifty-three (53) days to seek emergency injunctive relief. They have identified no material change in circumstances necessitating such relief. Moreover, Walker lacked fluency in ClinIQ and never used it. Even after he terminated Pitts, Walker—through his lawyer—began requesting information on how to log into ClinIQ and how to use it. The fact that Walker never used ClinIQ and never knew how to use it also establishes there is no threat of irreparable harm: if Walker's access to and fluency in ClinIQ was not important then, it cannot constitute an emergency now.

Following her termination, Pitts removed her personal credit card as the payment method associated with Women's Wellness's ClinIQ subscription. She did not manually cancel the subscription, delete the account, or remove patient information. The Practice retained access until approximately September 21, during which time no replacement payment method was provided. Its patient information remains preserved within Women's Wellness's separate subscription environment. *See* Complaint, Ex. 9.

Plaintiffs retain access to the underlying medical records through Elation, and Women's Wellness patients retain access to their ClinIQ patient portals. Notably, Plaintiffs have not identified a single patient whose treatment has been compromised by the Practice's loss of access to ClinIQ. Accordingly, Plaintiffs have not established a substantial threat of irreparable harm. *See Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) (recognizing that speculative injury is insufficient to warrant injunctive relief).

Finally, Plaintiffs' reliance on approximately thirty patient cancellations following Pitts' and Davis' terminations does not establish misappropriation. Following their terminations, Pitts

and Davis announced their departures on social media without referencing Women's Wellness or utilizing its patient information. Individuals responded expressing their intention to follow Pitts and Davis wherever they practiced. Plaintiffs have offered no evidence that Defendants used Plaintiffs' confidential information to solicit patients, as opposed to patients independently electing to follow their preferred medical providers.

Even assuming Plaintiffs could establish that Defendants' conduct caused a loss of patients or revenue, Plaintiffs have not demonstrated that such losses are incapable of calculation or that monetary damages would provide an inadequate remedy. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (recognizing harm is generally irreparable where no adequate remedy at law exists); *Tribal Solutions Group, L.L.C. v. Valandra*, No. 23-60233, 2023 WL 7314308, at *2–3 (5th Cir. Nov. 6, 2023) (affirming denial of preliminary injunction in trade secret litigation where plaintiffs failed to substantiate their alleged injuries or demonstrate the inadequacy of monetary damages).

**D. The balance of equities weighs against the requested injunction.**

Plaintiffs' assertion that the requested injunction would impose no legitimate hardship on Defendants assumes the resolution of the very ownership dispute underlying this litigation. Prohibiting Defendants from using or commercializing ClinIQ would substantially interfere with Pitts' asserted ownership interest, whereas Plaintiffs have continued to operate their medical practice without ClinIQ. Any legitimate concerns about Plaintiffs' patient information can be addressed through substantially narrower measures that do not interfere with Defendants' use of the underlying software. *See Daniels Health Sciences*, 710 F.3d at 585–86 (recognizing injunctive relief must be narrowly tailored to remedy specific conduct giving rise to the injunction). Indeed, granting injunctive relief would have immediate and negative effects on Defendants' ability to provide care for their patients. Simply put, Defendants' patients should not be penalized through

injunctive relief particularly where, as here, Plaintiffs have not met their heavy burden to show one is appropriate.

**E. The requested injunction would not serve the public interest.**

While the public interest favors protecting trade secrets, safeguarding confidential patient information, and ensuring continuity of medical care, it also favors lawful competition, patients' freedom to select their medical providers, and the protection of independently developed intellectual property. Plaintiffs' allegations concerning physician collaboration requirements do not establish an independent basis for the broad trade secret injunction sought. Neither Pitts nor Davis was subject to a noncompetition agreement, and Plaintiffs should not be permitted to use trade secret litigation to restrict otherwise lawful competition.

## CONCLUSION

Plaintiffs have failed to establish their entitlement to the extraordinary relief requested, so the Court should deny Plaintiffs' Motion. Alternatively, should the Court determine injunctive relief is warranted, Defendants respectfully request that such relief be limited to facilitating Plaintiffs' access to their own patient information without restricting Defendants' continued use of ClinIQ.

**WHEREFORE, PREMISES CONSIDERED**, Defendants respectfully request this Court deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction and grant Defendants such other and further relief as the Court deems just and proper.

This, the 16th day of November, 2026.

[signature block on following page]

Respectfully submitted,

*/s/ Mary R. Arthur*
CHADWICK M. WELCH (MSB NO. 105588)
MARY R. ARTHUR (MSB NO. 103778)

*Attorneys for Defendants*

OF COUNSEL:

Chadwick M. Welch (MSB No. 105588)
Mary R. Arthur (MSB No. 103778)
HEIDELBERG PATTERSON WELCH WRIGHT
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
769-567-1019 (Mimi direct)
601-790-1588 (general)
601-707-3075 (fax)
cwelch@hpwlawgroup.com
marthur@hpwlawgroup.com

**CERTIFICATE OF SERVICE**

I, Mary R. Arthur, hereby certify that on this day I served the foregoing pleading upon all counsel of record via the Court's electronic filing system.

THIS, the 16th day of November, 2026.

*/s/ Mary R. Arthur*
MARY R. ARTHUR